**CREDIT BUREAU SYSTEMS, INC., et al., Respondent,**

v.

**Brenda CARTER and Michael Carter, Appellants.**

No. ED 95062.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 22, 2011.

Francis J. Siebert, Scott City, MO, for Appellant.

Jason C. Comstock, Cape Girardeau, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

Brenda Carter and Michael Carter (collectively referred to as "Defendants") appeal from the judgment in favor of Credit Bureau Systems, Inc. ("CBS") in the amount of $39,245.15. We affirm in part and reverse and remand in part.

CBS, as an assignee for Auburn Surgery Center ("Auburn"), filed an action on an account against Defendants requesting a money judgment for services rendered to Brenda Carter.[1] Brenda Carter sought treatment at Auburn on December 13 and December 16 of 2005 for a myelogram and a blood patch and for a diskectomy on January 5, 2006. Dr. Kee Park ("Dr. Park"), of Cape Girardeau Neurological Surgery, Inc., performed the procedures. The total charge for the procedures was $27,100.30.

Brenda Carter had insurance through Blue Cross Blue Shield at the time the services were provided. Auburn was an out-of-network provider for Blue Cross Blue Shield. Joy Auer ("Auer"), the Director of Billing for Midwest Healthcare, testified on behalf of CBS and stated that as a "courtesy" for the patient for whom Auburn was out-of-network, Auburn would submit the claim to the patient's insurance company and any payments sent to the patient from the insurance should be forwarded on to Auburn. Auer stated that as part of the "courtesy" Auburn would then treat the patient as if Auburn was an in-network provider. For in-network providers, Brenda Carter would be required to pay a $1,500.00 deductible and a twenty percent co-pay. For out-of-network providers, Brenda Carter would be responsible for paying the $1,500 deductible and a fifty percent co-pay.

Prior to her treatment, Brenda Carter signed a form explaining that should she receive a check from her insurance company, that she should send it to Auburn along with her Explanation of Benefits and that payment would be applied to the balance owing. This form is only given to patients for whom Auburn is an out-of-network provider. Auer testified, that with regard to out-of-network providers, the insurance company sends any checks directly to the patient and the patient is expected to reimburse the provider and that was why Brenda Carter was asked to sign the form. In addition, the patient registration forms signed prior to each treatment at Auburn provide that "I understand that the facility files for reimbursement from my insurer or other payor as a courtesy, and failure on the part of the insurer shall not relieve me of my obligation to pay the facility." Auer testified all forms submitted to patients treated at Auburn are customarily explained prior to the patient signing the form.

Brenda Carter testified Auburn did not tell her they were out-of-network. Brenda Carter testified Dr. Park told her he would rather perform the procedures at Auburn and it would be cheaper for her to have the procedures at Auburn. Brenda Carter further testified she did not receive any explanation regarding the forms she signed. She also stated she received checks from Blue Cross Blue Shield, two for $708.00 and one for $250.00. Brenda Carter did not forward the payments to Auburn, but rather cashed the checks. She testified she did not know what the checks were for so she cashed them.

After discovering the checks had been sent to Brenda Carter, Auburn sent statements requesting the checks be forwarded

1. The original petition only named Brenda Carter. CBS amended its petition to add Michael Carter.

to Auburn. When Auburn did not receive the forwarded checks, it sent monthly billings to Defendants seeking payment of the full amount owed. In July of 2006, the account was assigned to CBS to facilitate collection of the full amount owed. Despite demanding payment, CBS was unable to obtain the funds from Defendants and CBS filed its action against Defendants.

The trial court ordered Defendants to pay CBS the principal amount of $27,100.30 plus interest in the amount of $10,644.85, for a total of $37,745.15. The trial court also ordered Brenda Carter to pay CBS $1,500.00 in attorney's fees. This appeal follows.

■■■ We review the trial court's judgment in accordance with the standard established in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Supplemental Medical Services v. Medi Plex Health Care*, 293 S.W.3d 128, 131 (Mo.App. E.D.2009). The trial court's judgment is sustained on appeal unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. As the trier of fact, it is the trial court's function and duty to assess the weight and value of the testimony of each witness. *SE Co–Op Service Co. v. Hampton*, 263 S.W.3d 689, 692 (Mo.App. S.D.2008). Thus, in determining whether a judgment is against the weight of the evidence, we must give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Id.* The trial court is free to believe all, part, or none of a witness's testimony. *Id.* We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment, and all contrary evidence and inferences are disregarded. *Id.*

■■ In their first point, Defendants contend the trial court erred in failing to find CBS was estopped from seeking to collect the full amount billed for its services "because Auburn [ ], through its agents, made a false material representation to Defendant, Brenda Carter, which said Defendant relied upon to her prejudice." We disagree.

Defendants assert CBS is estopped from seeking to collect the full amount of the charges assessed by Auburn because Dr. Park "represented to her that Auburn [ ] was an in-[network] provider." Defendants further contend Brenda Carter's testimony regarding Dr. Park's representation and her testimony that she had no knowledge that Auburn was not an in-network provider was not contradicted at trial.

However, after reviewing the entire record, we find Brenda Carter's testimony was contradicted. Although Brenda Carter testified Dr. Park told her it would be cheaper to have the procedures performed at Auburn, she also testified that Dr. Park did not advise her that her insurance would cover the procedures. In addition, Defendants failed to present evidence of an agency relationship between Dr. Park and Auburn.[2]

Moreover, Brenda Carter's testimony that she did not know Auburn was an out-of-network provider was contradicted by Joy Auer's testimony. Joy Auer testified that it was customary practice of Auburn to explain each of the documents signed by patients. There was evidence that Brenda Carter signed the form for patients with non-participating provider insurance carri-

---

2. The only evidence in the record regarding the relationship between Dr. Park and Auburn was that Dr. Park was a shareholder of Au- burn. This does not establish an agency relationship.

ers explaining that a patient who receives a check from their insurance company is to forward the check to Auburn.

■ Furthermore, absent a showing of fraud, a party who is capable of reading and understanding a contract is charged with the knowledge of that which he or she signs. *Gibson v. Adams*, 946 S.W.2d 796, 803 (Mo.App. E.D.1997). Defendants did not present any evidence of fraud. The evidence showed Brenda Carter is a licensed insurance agent capable of reading and understanding a contract.

Under the circumstances and our deference to the trial court with regard to the credibility of witnesses, we find the trial court did not err in failing to find CBS was estopped from seeking to collect the full amount billed for its services. Defendants' first point is denied.

■ We will now address Defendants' third point. In their third point, Defendants maintain the trial court erred in awarding the full amount billed in light of the evidence and because "the charges are clearly excessive and against the logic of the circumstances." We agree.

Here, although we find CBS was not estopped from seeking to collect the full amount billed, we must determine whether the trial court's judgment finding Defendants liable for the full amount billed was supported by the evidence. The form Brenda Carter signed regarding forwarding any checks from the insurance company does not state that if the checks are not forwarded, then the patient would be responsible for the full amount of the charges. The form provides:

You may receive a check from your insurance company for the procedures you are having performed. This check is payment for services you received from Auburn Surgery Center. It is very important you endorse the check payable to Auburn Surgery Center and mail it to us along with a copy of the Explanation of Benefits which you received with the check. This check will then be applied to the balance you [owe] Auburn Surgery Center for the procedure performed.

If Auburn Surgery Center does not receive this check from you, and it becomes necessary for the facility to engage in the services of an attorney to collect the amount you owe, then you agree to pay Auburn Surgery Center their reasonable attorney fees and the costs of the suit.

The form does not indicate a patient would be responsible for the full amount of the charges, not taking into account insurance benefits. The form only indicates the patient is responsible for paying the amount he or she owes Auburn either as an out-of-network provider or an in-network provider. Thus, there was no evidence that in any circumstances Brenda Carter would be liable for the full amount billed for the procedure.

Under the circumstances where Auburn was an out-of-network provider, Defendants should only be required to pay the amount not covered by her out-of-network provider benefits. Pursuant to the insurance verification form provided by Auburn, Brenda Carter would only be responsible for meeting the $1,500.00 deductible and fifty percent co-pay. Thus, we find Defendants' would only be responsible for paying Auburn the amount of the checks from Blue Cross and her out-of-network provider share of the charges. The trial court's award of the full amount of charged billed is not supported by the evidence. The amount awarded by the trial court is reversed. The cause is remanded for a determination of the amount owed according to the provisions of Defendants' out-of-network provider insurance benefits and

any interest, attorney's fees, and costs that may be allowed. Defendants' third point is granted.[3]

The judgment in favor of CBS is affirmed. However, the amount of the judgment is reversed and the cause is remanded for entry of a new amount of the judgment in favor of CBS and any interest, attorney's fees, and costs that may be allowed in accordance with this opinion.[4]

KURT S. ODENWALD, P.J. and ROBERT G. WILKINS, Sp.J., concur.

---

3. Because of our disposition of Defendants' third point, we need not address Defendants' remaining point on appeal.

4. CBS filed a motion for attorney's fees on appeal that was taken with the case. We grant CBS's motion and remand to the trial court to determine a reasonable award of attorney's fees for defending this appeal.